**Ricardo MEZA, Petitioner,**

**v.**

**INDUSTRIAL CLAIM APPEALS OF-FICE of the State of Colorado; Swift Foods Company; and Zurich American Insurance Company, Respondents.**

**Court of Appeals No. 12CA0797**

Colorado Court of Appeals,
Div. VII.

Announced May 9, 2013

Industrial Claim Appeals Office of the State of Colorado, WC No. 4-625-053

Hoggatt Law Office, P.C., Darby L. Hoggatt, Fort Collins, Colorado, for Petitioner

John W. Suthers, Attorney General, Alice Q. Hosley, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office

Ritsema & Lyon, P.C., Michael A. Perales, Denver, Colorado, for Respondents Swift Foods Company and Zurich American Insurance Company

Opinion by JUDGE RICHMAN

¶1 In this workers' compensation action, claimant, Ricardo Meza, seeks review of a final order of the Industrial Claim Appeals Office (Panel) affirming an administrative law judge's order awarding claimant permanent partial disability (PPD) benefits based on an impairment rating of ten percent of the lower right extremity given claimant after a division-sponsored independent medical examination (DIME).

¶2 Claimant argues that the ALJ: (1) lacked jurisdiction because employer did not appeal from an earlier eighteen-month DIME; (2) failed to give appropriate presumptive weight to the eighteen-month DIME, and (3) rendered an impairment decision not supported by substantial evidence. We address and reject each argument in turn, concluding that an eighteen-month DIME carries presumptive weight only with respect to maximum medical improvement (MMI), but not as to impairment; and because the ALJ correctly determined that the eighteen-month DIME's impairment rating was consequently not binding, substantial evidence supported the ALJ's PPD determination and therefore affirm the Panel's order.

## I. Background

¶3 Claimant sustained an admitted, compensable injury in 2004 when a cow bone fell on his right foot. On November 26, 2004, his authorized treating physician (ATP) placed him at MMI with no impairment and released him to work without restrictions. Plaintiff continued to experience pain, however, including the development of low back pain about four years after his initial injury.

¶4 Based on these pain complaints, employer, Swift Foods Company, and its insurer, Zurich American Insurance Company (collectively employer), agreed to reopen the claim in 2008. Upon reopening, claimant was treated by a new ATP who suspected that claimant had developed complex regional pain syndrome (CRPS) and that his low back pain was related to the foot injury. A physi-

cian retained by employer to conduct an independent medical examination (IME) disagreed. He opined that claimant had reached MMI, that any low back pain claimant was experiencing was unrelated to the 2004 injury, and that "within medical probability" claimant did not have CRPS.

¶ 5 Because the ATP had not placed claimant at MMI within eighteen months of commencing treatment, employer requested a DIME, as authorized by section 8–42–107(8)(b)(II). The DIME physician performed the eighteen-month DIME in January 2010, and placed claimant at MMI effective the date of the exam. In addition, the eighteen-month DIME physician issued a rating of claimant's impairment at ten percent of the whole person for CRPS and eleven percent for claimant's spine, giving claimant a combined impairment rating of twenty percent of the whole person.

¶ 6 Employer filed a final admission of liability (FAL) based upon the eighteen-month DIME physician's MMI and impairment ratings. However, claimant moved to strike the FAL, arguing that under section 8–42–107(8)(b)(II) and (8)(c), C.R.S.2012, a physician performing an eighteen-month DIME is limited to determining MMI and may not properly give an impairment rating. Under section 8–42–107.5, C.R.S.2012, a claimant with an impairment rating of twenty-five percent or less of the whole person, such as the rating given claimant by the eighteen-month DIME physician, is limited to receiving no more than $75,000 in partial and permanent disability. Claimant's counsel stated at the hearing before the ALJ that he challenged the eighteen-month DIME physician's twenty percent whole person impairment rating because claimant was "trying to get over the cap." Claimant therefore requested that he be sent back to his ATP for an impairment rating under section 8–42–107(8)(c).

¶ 7 An ALJ agreed that the eighteen-month DIME physician had overstepped his statutory authority, struck the FAL, and ordered claimant to see his ATP for a permanent impairment evaluation. The ALJ specifically ordered:

Claimant shall return to his [ATP] for a permanent impairment evaluation. Following that determination by the [ATP, employer] shall, as provided by statute, either file a [FAL] reflecting the MMI determination of [the eighteen-month DIME physician] and the impairment rating of the [ATP], or may request a [DIME] regarding either issue. If [employer] file[s] a [FAL], [c]laimant may then request a DIME by following statutory procedures.

¶ 8 Claimant returned to his ATP, who disagreed with the eighteen-month DIME physician's conclusion that claimant had reached MMI. Nonetheless, he rated claimant's impairment, giving claimant a higher impairment rating than the eighteen-month DIME physician had: eighteen percent for his spinal injuries, ten percent for CRPS, and four percent for the lower extremity, resulting in a total impairment rating of twenty-seven percent of the whole person.

¶ 9 Pursuant to the ALJ's order and section 8–42–107(8)(c), employer requested a second DIME to review the ATP's impairment rating. The parties selected a different physician to perform this second DIME. The second DIME physician agreed with the eighteen-month DIME physician that claimant had reached MMI in January 2010, but provided different impairment ratings. In her written report, the second DIME physician rated claimant's impairment as eighteen percent of the whole person, incorporating impairment ratings for his lower extremity injury, spine, and CRPS. However, in her deposition, the second DIME physician testified that the CRPS rating in the written report was "incorrect," and opined that claimant's impairment relating to his work injury was limited to his lower extremity. She therefore testified that his corrected impairment rating was ten percent of the lower extremity or four percent of the whole person.

¶ 10 At the hearing, claimant objected to the second DIME physician's opinions. Contrary to what he had stated in his motion to strike the FAL, he argued that the second DIME physician was bound by the impairment ratings and causality findings made by

the eighteen-month DIME physician because neither party had objected to those determinations. Alternatively, he argued that he had overcome the second DIME physician's opinions by clear and convincing evidence, warranting a finding that the ATP's impairment rating should prevail.

¶ 11 The ALJ disagreed, concluding that when claimant moved to strike the FAL he waived his opportunity to rely on any presumptive weight that might otherwise have been given to the eighteen-month DIME's impairment rating. Finding the testimonial opinions of the second DIME physician persuasive and credible, the ALJ also concluded that claimant had not overcome her opinions by clear and convincing evidence. The ALJ therefore awarded claimant PPD benefits based on an impairment rating of ten percent of the lower extremity, but found claimant's spine injury and CRPS unrelated and therefore awarded no benefits for those two conditions. As a result, the ALJ also denied and dismissed claimant's request "for maintenance medical care ... treatment for his lower back and ... CRPS-like complaints."

¶ 12 On claimant's petition for review, the Panel held that employer's FAL had properly been stricken. It further held that when an eighteen-month DIME is conducted, MMI and impairment are "bifurcated" such that the eighteen-month DIME physician's opinion is presumptive only with respect to MMI; a later DIME, conducted after an ATP has issued an impairment rating, is presumptive regarding impairment. Thus, although the Panel did not adopt the ALJ's conclusion that claimant had waived his argument regarding the weight to be given to the eighteen-month DIME, the Panel nonetheless affirmed the ALJ's decision.

## II. Analysis

¶ 13 On appeal, claimant seeks to have "[the second DIME physician]'s impairment ratings on CRPS and the lower back condition" added to the ALJ's PPD benefits award based on a ten percent lower extremity impairment rating. He argues that he is entitled to the higher impairment rating because (1) the ALJ was bound by the eighteen-month DIME physician's opinions and there-fore lacked jurisdiction to rule on the relatedness of his alleged CRPS and low back conditions, and (2) the ALJ improperly assigned him the burden of overcoming the second DIME physician's opinion. In addition, he also seeks an award for maintenance medical care, arguing that the ALJ erred by denying him these benefits. We reject these arguments.

### A. Jurisdiction

¶ 14 Claimant first contends that the ALJ was jurisdictionally barred from finding that claimant's CRPS condition, if any, and his low back complaints were unrelated to the May 2004 work-related injury. Contrary to his motion to strike the FAL, claimant argues that the determination of the eighteen-month DIME physician—who opined that claimant's low back pain and CRPS impairments were caused by claimant's 2004 work injury—was binding on the ALJ because neither party had requested a hearing to challenge his opinions. We disagree.

#### 1. Scope of Eighteen–Month DIME

¶ 15 In general, "a DIME physician's opinions concerning MMI and permanent medical impairment are given presumptive effect," and therefore must be overcome by clear and convincing evidence. *Leprino Foods Co. v. Indus. Claim Appeals Office,* 134 P.3d 475, 482 (Colo.App.2005) (citing § 8–42–107(8), C.R.S.2012). Failure to contest a DIME physician's opinions by filing an application for a hearing within thirty days of the report, or, if applicable, within thirty days of an ensuing FAL, closes the DIME physician's conclusions to further litigation unless the issues are reopened. *See* §§ 8–42–107.2, 8–43–203(2)(b)(II)(A), C.R.S. 2012; *Peregoy v. Indus. Claim Appeals Office,* 87 P.3d 261, 264 (Colo.App.2004).

¶ 16 However, the Panel concluded that these general rules do not govern when an eighteen-month DIME is requested under section 8–42–107(8)(b)(II). Rather, the Panel determined that an eighteen-month DIME physician's opinions regarding impairment are not presumptively binding because the statutory subsection providing for an eighteen-month DIME neither mentions nor ad-

dresses impairment. *See* § 8–42–107(8)(b)(II). Because section 8–42–107(8)(b)(II) "contains no provision for allowing an [eighteen]-month DIME physician to issue a permanent impairment rating," the Panel held that it could not read such permission into the statute. Claimant himself advocated for this interpretation of the statute when he moved to strike employer's FAL.

¶ 17 As with all statutory construction, if the language of a provision of the Workers' Compensation Act (Act) is clear, "we interpret the statute according to its plain and ordinary meaning," *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo. 2004), and apply the statute as written. *Mounkes v. Indus. Claim Appeals Office*, 251 P.3d 485, 487 (Colo.App.2010). In addition, "when examining a statute's plain language, we give effect to every word and render none superfluous because '[w]e do not presume that the legislature used language "idly and with no intent that meaning should be given to its language."'" *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo. 2005) (citation omitted) (quoting in part *Carlson v. Ferris*, 85 P.3d 504, 509 (Colo.2003)).

¶ 18 While we are not bound by the Panel's interpretation or its earlier decisions, *Olivas–Soto v. Indus. Claim Appeals Office*, 143 P.3d 1178, 1180 (Colo.App.2006), and review statutory construction de novo, *Ray v. Indus. Claim Appeals Office*, 124 P.3d 891, 893 (Colo.App.2005), *aff'd*, 145 P.3d 661 (Colo. 2006), we give deference to the Panel's reasonable interpretations of a statute it administers. *Sanco Indus. v. Stefanski*, 147 P.3d 5, 8 (Colo.2006); *Dillard v. Indus. Claim Appeals Office*, 121 P.3d 301, 304 (Colo.App. 2005), *aff'd*, 134 P.3d 407 (Colo.2006). The Panel's interpretation will therefore be set aside only "if it is inconsistent with the clear language of the statute or with the legislative intent." *Support, Inc. v. Indus. Claim Appeals Office*, 968 P.2d 174, 175 (Colo.App. 1998).

¶ 19 Because section 8–42–107(8)(b)(II) makes no mention of impairment ratings, we conclude that the Panel's interpretation that an eighteen-month DIME

physician's determination is presumptively binding only as to MMI is a reasonable and consistent application of the clear language of the statute.

¶ 20 The division's holding in *Leprino Foods*, on which claimant relies, does not persuade us to the contrary. *Leprino Foods* concerned a DIME conducted after the claimant's ATP had placed her at MMI and issued an impairment rating. Thus, the *Leprino Foods* DIME proceeded under section 8–42–107(8)(c), which authorizes a DIME physician to determine both MMI and impairment.

¶ 21 In contrast, the statute authorizing the eighteen-month DIME refers only to determination of MMI. *See* § 8–42–107(8)(b)(II). The finding of MMI is entitled to presumptive weight that may be overcome "only by clear and convincing evidence." § 8–42–107(8)(b)(III), C.R.S.2012. The eighteen-month DIME physician is not statutorily authorized to address impairment. And we may not read such a provision into the Act. *See Kraus v. Artcraft Sign Co.*, 710 P.2d 480, 482 (Colo.1985) ("We have uniformly held that a court should not read nonexistent provisions into the ... Act."). Any opinions of the eighteen-month DIME physician regarding impairment therefore carried no presumptive weight. *See Leprino Foods*, 134 P.3d at 483 (DIME physician's opinion regarding threshold compensability carries no presumptive weight); *Faulkner v. Indus. Claim Appeals Office*, 12 P.3d 844, 846 (Colo. App.2000) (because causation under section 8–41–301(1)(c), C.R.S.2012, was at issue rather than validity of DIME physician's impairment rating or MMI determination, DIME physician's opinion did not have to be overcome by elevated burden of proof).

¶ 22 We therefore conclude that when an eighteen-month DIME is issued under section 8–42–107(8)(b)(II), the physician's determination carries presumptive, binding weight concerning only MMI.

## 2. No Jurisdictional Bar

¶ 23 Because the eighteen-month DIME physician's impairment ratings carried no presumptive effect, the causation findings as-

sociated with the impairment ratings likewise carried no presumptive effect and were not jurisdictionally binding on the ALJ. With no presumptive effect, the eighteen-month DIME physician's impairment rating was advisory only, and neither party was required to object to or seek a hearing on causation issues related to impairment within the time limits imposed by sections 8–42–107.2 and 8–43–203(2)(b)(II)(A). In short, the eighteen-month DIME physician's impairment rating did not statutorily close the issue of causation of impairment.

¶ 24 To the contrary, the impairment issues, and consequently the related causation issues, addressed by the eighteen-month DIME were not ripe for hearing until the ATP had opined on claimant's impairment and the second DIME physician had issued her impairment ratings. *See* § 8–42–107(8)(c) ("A hearing on this matter shall not take place until the finding of the independent medical examiner has been filed with the division."); *Delaney v. Indus. Claim Appeals Office,* 30 P.3d 691, 694 (Colo.App.2000) ("[R]esolution of the permanent impairment issue should be deferred until after the DIME report has been filed.").

¶ 25 Accordingly, the ALJ was not jurisdictionally barred from considering the causation of claimant's impairment.

¶ 26 Nor are we persuaded, as claimant appears to suggest, that the eighteen-month DIME physician's discussion of claimant's CRPS-like condition and low back complaints related exclusively to his MMI findings and thus was entitled to presumptive validity. In our view, the eighteen-month DIME physician's conclusions that claimant's CRPS and low back conditions are compensable are integral to that physician's stricken impairment rating.

¶ 27 In his report, the eighteen-month DIME physician observed that claimant had "probable [CRPS] ... at [MMI] but with permanent impairment." He also noted that because of "the equivocal nature of the [CRPS] diagnosis in this case" and "the possibility of symptom magnification and secondary gain," the impairment rating for CRPS was ten percent of the whole person. With respect to claimant's complaints of low back pain, the eighteen-month DIME physician observed these were "probably secondary to antalgic gait" and concluded claimant's spine impairment was eleven percent. Thus, his observations that claimant's possible CRPS and low back pain were related to the 2004 work injury were made largely in conjunction with the impairment ratings he issued, rather than with his MMI determination. Because these opinions related to the impairment ratings the eighteen-month DIME physician assigned to claimant's CRPS and low back pain, they carried no presumptive weight and did not become final and beyond challenge.

### 3. Binding Effect of Causation Determination

■ ¶ 28 As a corollary, claimant now appears to also argue that even if the eighteen-month DIME physician's impairment ratings are not binding, his causation findings related to claimant's CRPS and low back injury, separate and apart from his MMI and impairment findings, should be binding. However, a DIME physician's opinion regarding the causation or compensability of a claim never carries any presumptive weight. *See Leprino Foods,* 134 P.3d at 483 (DIME physician's opinion regarding threshold causation carries no presumptive weight); *Faulkner,* 12 P.3d at 846 (DIME physician's opinion as to MMI and impairment carry presumptive weight, but not regarding threshold causation).

### 4. Presumption of Validity of Second DIME Physician's Opinions

¶ 29 Claimant next contends that the ALJ "did not enforce the presumption of validity" associated with the eighteen-month DIME physician's causation determinations. As we understand claimant's contention, this argument, too, is premised on the incorrect notion that the eighteen-month DIME physician's causation opinions were related to only MMI. But, as noted above, MMI and impairment are distinct under the Act, and causation may relate to either or both.

¶ 30 We have already determined that to the extent the eighteen-month DIME physi-

cian's causation opinions were related to his impairment ratings, they were not subject to presumptive weight. The second DIME physician had the statutory authority to evaluate the causes and extent of claimant's permanent impairment. The statute provides for a second DIME opinion if either party disputes the ATP's later impairment ratings. For the second DIME opinion to be truly independent, that physician cannot be bound by the causation findings of the eighteen-month DIME physician. Her opinions concerning impairment, and the cause or causes of claimant's impairment, were entitled to presumptive weight and could only be overcome by clear and convincing evidence. *See* § 8–42–107(8)(c).

■ ¶ 31 Moreover, it was for the ALJ to determine if the impairment opinions expressed by the second DIME physician, including the causes of claimant's impairment, had been overcome by clear and convincing evidence. *See Mosley v. Indus. Claim Appeals Office*, 78 P.3d 1150, 1153 (Colo.App. 2003) ("Whether the DIME physician's rating has been overcome is a question of fact for determination by the ALJ."). The ALJ's findings regarding overcoming the DIME therefore will not be set aside if supported by substantial evidence in the record. *See Wilson v. Indus. Claim Appeals Office*, 81 P.3d 1117, 1119 (Colo.App.2003) (substantial evidence supported ALJ's finding that claimant failed to overcome DIME).

■ ¶ 32 Here, although the ATP's and eighteen-month DIME physician's opinions concerning causation and impairment were contrary to those of the second DIME physician, a physician retained by employer agreed with the second DIME physician that claimant's low back pain and CRPS, if any, were unrelated to his work injury. Thus, the second DIME physician's opinions are corroborated by other evidence in the record. The ALJ found the opinions of this retained physician and the second DIME physician credible and persuasive. Conversely, the ALJ found the opinions and testimony of claimant's ATP to be less persuasive and less reliable. In addition, relying on the observations of employer's IME physician, the ALJ found claimant's pain complaints unreliable.

¶ 33 Claimant's belief in the validity of his ATP's conclusions notwithstanding, the ALJ was entitled to rely on the testimony of the second DIME physician and other medical experts and to weigh the credibility of the evidence. It is solely within the ALJ's discretionary province to weigh the evidence and determine the credibility of expert witnesses. *See Metro Moving Storage Co. v. Gussert*, 9 914 P.2d 411, 415 (Colo.App.1995) (reviewing court must defer to the ALJ's credibility determinations and resolution of conflicts in the evidence and may not substitute its judgment for that of the ALJ); *Rockwell Int'l v. Turnbull*, 802 P.2d 1182, 1183 (Colo.App.1990) ("[I]f, as here, expert testimony is presented, the weight to be accorded to the testimony is a matter exclusively within the discretion of the [ALJ] as fact-finder."). Nor may we set aside a ruling dependent on witness credibility where the testimony has not been conclusively rebutted by other evidence. *See Arenas v. Indus. Claim Appeals Office*, 8 P.3d 558, 561 (Colo. App.2000) ("we may not interfere with the ALJ's credibility determinations" unless the evidence is "overwhelmingly rebutted by hard, certain evidence" to the contrary).

¶ 34 Given that substantial evidence supports the ALJ's determination that claimant failed to overcome the second DIME physician's impairment and causation determinations by clear and convincing evidence, we perceive no basis for setting aside the Panel's ruling upholding the ALJ's PPD award.

### 5. Waiver and Collateral Estoppel

¶ 35 Because we have determined that the impairment ratings issued by the eighteen-month DIME physician carried no presumptive weight and were not jurisdictionally binding, we need not and do not address whether claimant waived his jurisdictional argument at the hearing or whether collateral estoppel applied.

### B. Assessment of Burden of Proof

¶ 36 Claimant next contends that the ALJ improperly assigned him the burden of overcoming the second DIME physician's opinions by clear and convincing evidence. As

we understand claimant's argument, he implies that the opinions expressed by the second DIME physician in her written report should take precedence over those she orally expressed in her deposition. He argues that because she opined in her report that claimant had CRPS related to his work injury, employer should have been required to overcome that written report by clear and convincing evidence, and the ALJ erred by requiring him to overcome by clear and convincing evidence the opinions she espoused in her deposition. We are not persuaded that the ALJ or the Panel erred.

■ ¶ 37 Claimant's contention presupposes that a DIME physician's written report must be given more weight than opinions orally expressed under oath. He offers no authority for this supposition, and we know of none. As noted by employer, the second DIME physician's report was unclear and ambiguous in addressing CRPS. Her testimony was elicited to shed light on her views. To the extent her testimony conflicted with her written report, it was within the ALJ's sound discretion to resolve the conflict. *See Blue Mesa Forest v. Lopez,* 928 P.2d 831, 833 (Colo.App.1996). He did so by adopting the opinions the second DIME physician gave under oath, finding that claimant's CRPS, if any, and his low back pain were unrelated and noncompensable. Accordingly, the ALJ properly assigned to claimant the elevated burden of proof to overcome the second DIME physician's opinion that his CRPS and back pain were not caused by his work injury.

### C. Maintenance Medical Benefits

¶ 38 Lastly, claimant seeks an award of maintenance medical benefits for his lower spine complaints and CRPS-like condition. However, as the Panel and employer point out, claimant has offered little, if any, analysis supporting his contention that he is entitled to these benefits. He states only that if "this Court reverses the ALJ's causation determinations, then it should also reverse the ALJ's denial of maintenance care benefits." We have concluded, however, that the Panel properly affirmed the ALJ's causation determinations. Given the dearth of legal grounds offered to set aside the ALJ's denial of maintenance benefits beyond the arguments already discussed, we decline to address maintenance benefits further. *See Mauldin v. Lowery,* 127 Colo. 234, 236, 255 P.2d 976, 977 (1953) ("Our Court will not search through briefs to discover what errors are relied on, and then search through the record for supporting evidence. It is the task of counsel to inform us, as required by our rules, both as to the specific errors relied on and the grounds and supporting facts and authorities therefor."); *Antolovich v. Brown Grp. Retail, Inc.,* 183 P.3d 582, 604 (Colo.App.2007) (declining to address "underdeveloped arguments").

¶ 39 The order is affirmed.

JUDGE J. JONES and JUDGE NIETO * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2012.